**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| GALLIT FISCHMAN, Individually, | § § § | CIVIL ACTION NO. 3:26-cv-01882 |
| Plaintiff, | § § | District Judge Ed Kinkeade |
| v. | § § | Magistrate Judge Rebecca Rutherford |
| NOVARTIS PHARMACEUTICALS CORPORATION, | § § § § | |
| Defendant. | § § | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT NOVARTIS PHARMACEUTICALS CORPORATION'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Gallit Fischman ("Plaintiff") files this Response in Opposition to the Motion to Dismiss ("Motion") filed by Defendant Novartis Pharmaceuticals Corporation ("Defendant" or "Novartis" or "NPC"), and respectfully shows the Court as follows:

**TABLE OF CONTENTS**

NATURE OF THE CASE ............................................................................................................... 1

ARGUMENT ................................................................................................................................... 3

   I. Defendant's Motion Depends on Recasting the Complaint Rather Than Addressing the Claims Pleaded ........................................................................................................................... 3

II. Plaintiff's Claims Arise from Defendant's Own Conduct, Not Traditional Innovator Liability ........................................................................................................................ 5

III. This Case Concerns Novartis's FDA Responsibilities, Not Traditional Innovator Liability  7

IV. Chapter 82's Pharmaceutical-Specific Framework Governs Plaintiff's Product-Liability Claims ........................................................................................................................ 9

V. Defendant's Footnote 8 Applies the Same Recharacterization to Plaintiff's Label and Communications Allegations ............................................................................. 10

VI. The Boxed Warning Did Not Address the Off-Label Use ................................................. 11

VII. Plaintiff Has Pleaded Facts Sufficient at This Stage to Invoke Section 82.007(b)(3)'s Off-Label-Promotion Exception .......................................................................... 12

VIII. Plaintiff's Claims Are Not Preempted, as the Complaint Plausibly Alleges Newly Acquired Information ..................................................................................... 13

IX. The Absence of a Prior Decision Addressing These Precise Facts Does Not Bar Plaintiff's Claims ................................................................................................. 15

X. Plaintiff Has Standing to Assert Her DTPA Claim ....................................................... 16

XI. Plaintiff Has Standing to Assert Her Individual Wrongful-Death Claim .......................... 18

XII. This Court Has Specific Personal Jurisdiction Over Novartis, or, at Minimum, Plaintiff Is Entitled to Jurisdictional Discovery ................................................................ 21

XIII. Defendant Improperly Attempts to Supplement the Complaint with Allegations from Pleadings Filed in Separate Actions ............................................................. 23

CONCLUSION AND PRAYER ........................................................................................... 24

CERTIFICATE OF SERVICE .............................................................................................. 25

## TABLE OF AUTHORITIES

### CASES

*Adkison v. Polaris Industries, Inc.*, No. 3:18-CV-02014-M, 2020 WL 159248 (N.D. Tex. Jan. 13, 2020) ...................................................................................................... 19

*Anderson v. Abbott Laboratories*, No. 3:11-CV-1825-L, 2012 WL 4512484 (N.D. Tex. Sept. 30, 2012) ...................................................................................................... 12

*Avila v. St. Luke's Lutheran Hospital*, 948 S.W.2d 841 (Tex. App. San Antonio 1997, pet. denied) ................................................................................................ 18, 20

*Baker v. Countrywide Home Loans, Inc.*, No. 3:08-CV-0916-B, 2009 WL 1810336 (N.D. Tex. June 24, 2009) ................................................................................. 18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 12

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017) ........................................ 21

*Centocor, Inc. v. Hamilton*, 372 S.W.3d 140 (Tex. 2012) ...................................................... 11

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ...................................................................... 21

*Del Valle v. Pliva, Inc.*, No. B-11-113, 2012 WL 4747259 (S.D. Tex. Sept. 12, 2012) ................. 7, 8

*Eckhardt v. Qualitest Pharmaceuticals, Inc.*, 751 F.3d 674 (5th Cir. 2014) ...................................7

*Enciso v. Chmielewski*, No. 14-99-00714-CV, 2000 WL 423085 (Tex. App. Houston [14th Dist.] Apr. 20, 2000, no pet.) ..................................................................................................................20

*Estate of Alex through Coker v. T-Mobile US, Inc.*, 313 F. Supp. 3d 723 (N.D. Tex. 2018) ........18

*Estate of King v. Texas Department of Criminal Justice*, No. H-22-1858, 2023 WL 6370646 (S.D. Tex. July 13, 2023)...........................................................................................................20

*Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005) ...........................................23

*Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983)......................................17

*Foster v. American Home Products Corp.*, 29 F.3d 165 (4th Cir. 1994) ........................................7

*Gaulding v. Celotex Corp.*, 772 S.W.2d 66 (Tex. 1989) ...........................................................9, 11

*Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019) ............................................15

*Henry v. Angelini Pharma, Inc.*, No. 2:17-cv-02593-TLN-KJN, 2020 WL 1532174 (E.D. Cal. Mar. 31, 2020).........................................................................................................................22

*In re Celexa & Lexapro Marketing & Sales Practices Litigation*, 779 F.3d 34 (1st Cir. 2015)....15

*In re Zantac (Ranitidine) Products Liability Litigation*, 546 F. Supp. 3d 1192 (S.D. Fla. 2021) .22

*Johnson v. Novartis Pharmaceuticals Corp.*, No. 5:19-cv-01087, 2020 WL 2300139 (W.D. Tex. May 5, 2020), aff'd, 845 F. App'x 305 (5th Cir. 2021)........................................................7, 12

*Kennedy v. Sale*, 689 S.W.2d 890 (Tex. 1985) ...........................................................................17

*Kramer v. Lewisville Memorial Hospital*, 858 S.W.2d 397 (Tex. 1993)......................................19

*Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33 (Tex. 1963).........................................................19

*Lashley v. Pfizer Inc.*, 750 F.3d 470 (5th Cir. 2014)..................................................................7, 8

*Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394 (Tex. App.—San Antonio 2000, no pet.) ....................................................................................................................................18

*Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465 (5th Cir. 2006)..............................................22

*Mahan Volkswagen, Inc. v. Hall*, 648 S.W.2d 324 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) ................................................................................................................................17

*McKay v. Novartis Pharmaceutical Corp.*, 751 F.3d 694 (5th Cir. 2014)....................................11

*Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299 (2019)...........................................13, 15

*Moncibaiz v. Pfizer Inc.*, 532 F. Supp. 3d 452 (S.D. Tex. 2021)..................................................10

*Morin v. Ford Motor Co.*, No. 3:07-CV-1700-L, 2009 WL 2486027 (N.D. Tex. Aug. 12, 2009) ....................................................................................................................................................19

*Phares v. Actavis-Elizabeth LLC*, 892 F. Supp. 2d 835 (S.D. Tex. 2012)......................................9

*PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) ...........................................................................13

*PPG Industries, Inc. v. JMB/Houston Centers Partners Ltd. Partnership*, 146 S.W.3d 79 (Tex. 2004) ...........................................................................................................................................17

*Quintanilla v. Bristol-Myers Squibb Co.*, No. 2:16-CV-172, 2016 WL 11902139 (S.D. Tex. Oct. 25, 2016) ....................................................................................................................................12

*Sharpe v. Lyft, Inc.*, No. 4:22-CV-4336, 2023 WL 3509718 (S.D. Tex. May 1, 2023) ................17

*Shell Oil Co. v. Chapman*, 682 S.W.2d 257 (Tex. 1984)...............................................................17

*Thomes v. Porter*, 761 S.W.2d 592 (Tex. App.—Fort Worth 1988, no writ)...............................17

*Trostle v. Trostle*, 77 S.W.3d 908 (Tex. App. Amarillo 2002, no pet.) ........................................19

*Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420 (5th Cir. 1992) ..............................................17

*Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994) ...............................................................................22

*Wyeth v. Levine*, 555 U.S. 555 (2009) ...............................................................................13, 14

## STATUTES

Tex. Civ. Prac. & Rem. Code § 71.004 .......................................................................18, 19, 20

Tex. Civ. Prac. & Rem. Code § 71.021 .................................................................................19

Tex. Civ. Prac. & Rem. Code § 82.001(2)...............................................................................9, 10

Tex. Civ. Prac. & Rem. Code § 82.007 ...............................................................9, 10, 11, 12, 13

Tex. Bus. & Com. Code § 17.45(4) ........................................................................................17

## REGULATIONS

21 C.F.R. § 201.57(c)(6)(i) ..................................................................................................14

21 C.F.R. § 312.2(b)(1)........................................................................................................13

21 C.F.R. § 314.3(b) ...........................................................................................................14

21 C.F.R. § 314.70(c)(6)(iii)...............................................................................................13

21 C.F.R. § 314.81(b)(3)(i) ...................................................................................................8

## RULES

Fed. R. Civ. P. 12(b)(2)...................................................................................................22, 23

Fed. R. Civ. P. 12(b)(6)...........................................................................................5, 7, 9, 13, 15, 24

## NATURE OF THE CASE

This case concerns Novartis's creation and promotion of an incomplete safety narrative for everolimus in the United States transplant market. The Complaint alleges that Novartis took a potent oncology compound carrying a heart-transplant mortality warning, repositioned it as a modern, kidney-sparing therapy, and promoted conversion of stable transplant recipients away from established immunosuppression without the clinical framework necessary to do so safely.

Novartis's Motion attempts to reduce the case to the fact that Dov Fischman received generic everolimus rather than the branded product. But the Complaint does not seek to hold Novartis liable for the physical generic tablet. It seeks to hold Novartis liable for its own conduct in promoting the adoption of generic everolimus through the false narrative Novartis created.

The Complaint alleges that Novartis organized its transplant strategy around the shared molecule everolimus, selectively invoking aspects of its three brand identities to promote broader use while minimizing contrary information. This produced a single identity for everolimus and encouraged physicians to evaluate conversion through a blended body of information, creating the impression that conversion was established and beneficial despite the absence of an adequate safety framework for stable heart-transplant recipients.

The Complaint alleges that Novartis deliberately minimized the significance of its three brands and shifted the everolimus market toward generic substitution, fully understanding the consequences. The Motion now relies on the very distinctions Novartis manipulated to disclaim responsibility for the prescribing environment it created.

Everolimus suppresses the immune system by inhibiting cellular growth and proliferation. Novartis presented the drug to the transplant market as providing clinical benefits, particularly

renal preservation, while obscuring the broader immunologic consequences of that mechanism. The Complaint alleges that Novartis misleadingly attributed the renal benefit to everolimus itself, even though it actually resulted from reducing the patient's calcineurin inhibitor.

Novartis owned both the established cyclosporine therapy on which Dov Fischman had remained stable for approximately nine years and the newer, more profitable everolimus therapy it promoted as a kidney-sparing alternative. By controlling the messaging for both drugs, Novartis was able to diminish cyclosporine and redirect prescribing toward everolimus.

Novartis's own label confirmed that the mortality warning arose from a trial involving de novo heart-transplant recipients, yet Novartis used its broader activities to normalize conversion among clinically stable recipients without establishing how that warning applied or providing an adequate clinical framework for the transition. In that manner, Novartis's market narrative substituted for necessary safeguards.

Heart transplantation is concentrated within specialized academic transplant centers, where scientific activity directly shapes clinical practice. In that setting, Novartis's communications helped establish transplant practices rather than merely educate physicians. Everolimus conversion likewise occurred within this specialized system and often depended on Novartis-supported patient assistance programs due to the drug's high cost and Medicare's lack of coverage for the unapproved indication.

Novartis was aware of the risks. Sirolimus, the parent drug from which everolimus was derived, gave Novartis established knowledge of the drug's pharmacology, as shown in Exhibit D to the Complaint. The 2013 Department of Justice settlement concerning the unlawful promotion of sirolimus further reinforced that awareness. Yet rather than using those lessons to create a safer

drug strategy and more responsible messaging, Novartis repurposed the same failed framework for broader transplant use.

Dov Fischman was converted to everolimus in May 2024 within the prescribing environment Novartis created. Novartis's safety-and-efficacy messaging displaced the information necessary to determine whether that off-label conversion was appropriate and to respond when serious complications developed. Everolimus was not timely discontinued or identified as the cause, his prior stability was never restored, and he died on January 6, 2025.

Plaintiff's claims arise from Novartis's own promotion of everolimus, which contributed to Dov Fischman's death. Another company's manufacture of the tablet does not eliminate Novartis's responsibility for the prescribing framework it created.

## ARGUMENT

### I. Defendant's Motion Depends on Recasting the Complaint Rather Than Addressing the Claims Pleaded

Defendant's Motion narrows Plaintiff's allegations and then applies authorities addressing theories Plaintiff did not plead. The Complaint expressly states that "[t]his case is not about the physical manufacture of the generic tablet dispensed to Dov Fischman," but about Defendant's own creation and control of the warning and clinical framework surrounding everolimus conversion. Defendant nevertheless recasts the case as one limited to the labeling and marketing of Zortress, a branded product Dov Fischman did not receive. Plaintiff instead alleges that Novartis promoted everolimus through an integrated scientific and commercial identity that blurred distinctions among its brands and influenced prescribing regardless of whether the prescription was filled with Zortress or a generic equivalent. Novartis cannot promote everolimus as a unified

product to expand prescribing and then rely on brand distinctions to avoid responsibility after a generic tablet is dispensed. Plaintiff seeks to hold Novartis liable for its own conduct, not merely its status as the NDA holder for Zortress.

The same recasting appears in Defendant's treatment of the Black Box Warning. Plaintiff does not allege that Novartis failed to disclose mortality and infection as risks. Plaintiff alleges that Novartis knew of those risks yet promoted off-label heart-transplant conversion in a manner that minimized them against the drug's purported benefits. That Dov Fischman suffered the very harms identified in the label supports Plaintiff's theory rather than defeats it.

Defendant similarly reduces Plaintiff's off-label-promotion allegations to a bare assertion that Novartis promoted everolimus for heart-transplant use. The Complaint alleges that Novartis used scientific publications, transplant-related activities, and market communications to normalize conversion while blurring the distinctions among Zortress®, Certican®, and Afinitor®. Defendant quotes the general allegation while omitting the factual mechanism supporting it.

The Motion likewise reduces Plaintiff's allegations to undefined "marketing decisions." The Complaint identifies specific representations concerning renal protection, coronary allograft vasculopathy, and CMV-related outcomes and explains why each was materially misleading when used to promote conversion to everolimus. Defendant collapses those allegations into the generic label of "marketing" and analyzes them as ordinary innovator-liability or failure-to-warn claims.

Defendant further asserts that "[a]ll of plaintiff's claims against NPC, regardless of the cause of action asserted, are product liability claims." The Complaint pleads multiple causes of action arising from the same conduct, including negligence, gross negligence, strict products liability, failure to warn, wrongful death, and DTPA violations, each resting on the same facts but

a different legal theory. Defendant collapses those distinct claims into a single failure-to-warn theory and argues against that simplified version.

Finally, the Complaint alleges that Novartis need not be the sole contributor to Dov Fischman's death; its conduct was a producing and proximate cause even if responsibility is shared with other actors. Defendant instead argues that all claims fail since Novartis did not manufacture the generic tablet. That addresses who supplied the tablet, not whether Novartis's own communications, representations, omissions, and risk framework were a but-for, producing, and proximate cause of the conversion and resulting death.

Defendant's Motion repeatedly exceeds the Rule 12(b)(6) inquiry. At this stage, the Court must accept Plaintiff's well-pleaded factual allegations as true and determine only whether those allegations plausibly satisfy the elements of the causes of action asserted. The issue is not whether Defendant agrees with Plaintiff's characterization of the facts or prefers a narrower theory of the case. Defendant instead repeatedly substitutes its own factual characterizations for those alleged in the Complaint and then argues those substituted allegations fail as a matter of law. Rule 12(b)(6) requires the Court to evaluate the Complaint Plaintiff actually filed, not the materially different one Defendant constructs for dismissal.

## II. Plaintiff's Claims Arise from Defendant's Own Conduct, Not Traditional Innovator Liability

Plaintiff does not allege that the generic tablet was defectively manufactured, or seek to hold Novartis liable merely for holding the New Drug Application for the branded reference drug. The Complaint alleges that Novartis created and controlled the information physicians relied on in considering off-label conversion to everolimus, promoted that framework, and failed to provide

the safeguards necessary to implement it safely. Those allegations arise from Novartis's own conduct, not the identity of the company that later manufactured a chemically equivalent tablet.

Defendant repeatedly returns to the fact that Dov Fischman received generic everolimus, but that fact does not resolve the claims alleged. The question is not who manufactured the tablet, but whether Novartis's warnings, communications, promotional activities, and omissions foreseeably shaped the prescribing environment that led physicians to convert a stable heart-transplant recipient to everolimus without an adequate clinical framework. That a generic manufacturer supplied the tablet does not change those allegations.

The Motion also conflates lawful off-label prescribing with the distinct issue here. Plaintiff does not allege physicians acted improperly by prescribing everolimus off label; she alleges Novartis influenced how that use was understood within the transplant community while failing to provide the information needed to evaluate its risks fully. The legality of an off-label prescription does not preclude liability for a manufacturer's own misleading or materially incomplete communications about that use.

Defendant also minimizes its regulatory role while relying on it as a defense. As the NDA holder, Novartis created the reference labeling, controlled the prescribing information, and exercised regulatory authority unavailable to generic manufacturers, who did not create the warning structure or prescribing framework accompanying everolimus. Having used that authority to shape the drug's scientific and clinical understanding, Novartis cannot avoid scrutiny by pointing only to the identity of the company that manufactured the dispensed tablet.

**III. This Case Concerns Novartis's FDA Responsibilities, Not Traditional Innovator Liability**

Defendant's Motion recasts Plaintiff's claims as traditional innovator liability and relies on Defendant's principal authorities, including *Johnson v. Novartis Pharmaceuticals Corp.*, No. 5:19-cv-01087, 2020 WL 2300139 (W.D. Tex. May 5, 2020), aff'd, 845 F. App'x 305 (5th Cir. 2021), *Eckhardt v. Qualitest Pharmaceuticals, Inc.*, 751 F.3d 674 (5th Cir. 2014), *Foster v. American Home Products Corp.*, 29 F.3d 165 (4th Cir. 1994), and the related cases cited in the Motion, to argue that Novartis cannot be liable when a patient receives a generic equivalent. Those cases addressed liability arising from a brand manufacturer's labeling, NDA status, or relationship to a generic product. Plaintiff instead alleges liability arising from Novartis's own independent post-approval promotion of everolimus for an unapproved use without the clinical framework necessary to implement that use safely. The Court should not extend those decisions beyond the claims and conduct they addressed.

Defendant relies on *Lashley* and *Del Valle* as though they foreclose every claim against a brand manufacturer whenever a generic equivalent is dispensed. *Lashley v. Pfizer Inc.*, 750 F.3d 470, 472–73, 476 (5th Cir. 2014). They do not. Those cases involved generic metoclopramide prescribed for an FDA-approved indication, with prescribing information directed to that approved use. The plaintiffs' claims concerned allegedly inadequate or misleading information attributed to the brand manufacturers regarding the same approved drug and use.

Plaintiff alleges a fundamentally different course of conduct involving everolimus, a potent oncology drug that Novartis repurposed and promoted for an unapproved, off-label use in heart-transplant recipients. Everolimus carried a Black Box Warning identifying increased mortality and serious infections in heart-transplant patients, while its prescribing information was directed to

approved kidney- and liver-transplant indications and supplied no adequate safety framework for heart-transplant conversion. Novartis nevertheless portrayed everolimus as a safer and superior, kidney-sparing alternative to established immunosuppressive therapy and promoted conversion without adequate direction concerning dosing, monitoring, recognition and attribution of complications, discontinuation, and restoration of prior immunosuppressive therapy. Whether Texas law imposes liability for that conduct was not the question decided in *Lashley* or *Del Valle*.

Plaintiff further alleges that Defendant independently created and disseminated continuing physician-facing scientific and promotional communications after approval, conduct governed by regulatory obligations separate from the FDA-approved label itself. The repeated clinical trials allegedly functioned as seeding trials, meaning studies presented as scientific research while also serving the commercial objective of increasing physician familiarity, prescribing, and market adoption. Rather than investigate genuinely new scientific questions, the trials repeatedly emphasized the same purported benefits of everolimus, particularly claimed renal advantages associated with reduced calcineurin-inhibitor exposure, to expand physician acceptance of off-label conversion therapy. Novartis then continued disseminating those benefits through post-approval promotional activity. FDA regulations require an NDA applicant to submit specimens of promotional labeling and advertising at initial dissemination or publication. 21 C.F.R. § 314.81(b)(3)(i). Plaintiff alleges that Novartis never issued promotional labeling accurately addressing the risks to established heart-transplant recipients and instead used repeated seeding trials and related communications to reinforce the same purported benefits and expand acceptance of off-label conversion therapy.

Defendant cites no Fifth Circuit or Texas authority deciding whether an NDA holder may be liable for the independent conduct alleged here. Dismissal under Rule 12(b)(6) is therefore unwarranted.

## IV. Chapter 82's Pharmaceutical-Specific Framework Governs Plaintiff's Product-Liability Claims

Defendant relies principally on *Gaulding v. Celotex Corp.*, 772 S.W.2d 66 (Tex. 1989), to argue that Plaintiff must prove Novartis manufactured the tablets Dov Fischman received. *Gaulding* involved an asbestos claimant who could not identify which manufacturer supplied the injury-causing product. It established a product-identification requirement for that traditional physical-product claim. It did not involve prescription drugs, FDA-approved warnings, off-label promotion, an NDA holder's regulatory responsibilities, or liability arising from a defendant's own communications and conduct.

Novartis stretches *Gaulding* far beyond that holding. It characterizes every claim as a products-liability action under § 82.001(2), treats physical manufacture of the dispensed tablet as a universal requirement, and labels any claim against an NDA holder prohibited "innovator liability." Section 82.001(2), however, only defines the actions governed by Chapter 82. It does not make every such claim depend on who manufactured the individual dose or eliminate liability for a pharmaceutical defendant's own conduct.

*Phares v. Actavis-Elizabeth LLC*, 892 F. Supp. 2d 835, 844–46 (S.D. Tex. 2012), does not extend that rule. *Phares* treated claims seeking recovery for injury caused by a pharmaceutical product as products-liability claims governed by Chapter 82. It did not hold that Chapter 82 eliminates liability for a defendant's own promotional conduct. Section 82.007(b)(3) expressly

makes that conduct material when a defendant promotes an unapproved use and the promoted use causes injury.

Chapter 82 includes a separate framework for pharmaceutical warning and information claims. Section 82.007 presumes that an FDA-approved warning is adequate, but it creates specific exceptions based on the conduct of the particular defendant. Tex. Civ. Prac. & Rem. Code §§ 82.001(2), 82.007(a)–(b).

Tex. Civ. Prac. & Rem. Code § 82.007(b)(3) does not independently create Plaintiff's causes of action. Plaintiff's claims arise from established Texas duties governing negligence, misrepresentation, promotional conduct, and pharmaceutical warnings. Instead, it prevents Defendant from invoking FDA approval of its warnings as a complete statutory shield where Defendant allegedly promoted an unapproved use that caused the injury.

Defendant's innovator-liability authorities do not resolve the question presented here. They rejected claims seeking to hold a brand-name manufacturer liable merely on the ground that a generic manufacturer produced the drug or copied the brand-name label. Plaintiff alleges something different. Novartis controlled the governing pharmaceutical information for everolimus and engaged in its own post-approval conduct concerning heart-transplant use, including conduct expressly addressed by § 82.007(b)(3). The claims therefore arise from Novartis's own conduct, not from another company's manufacture of the tablets Dov Fischman received.

## V. Defendant's Footnote 8 Applies the Same Recharacterization to Plaintiff's Label and Communications Allegations

Defendant repeats the same recharacterization in Footnote 8. Relying on *Moncibaiz v. Pfizer Inc.*, 532 F. Supp. 3d 452 (S.D. Tex. 2021), it argues that all allegations concerning warnings must be treated solely as failure-to-warn claims. *Moncibaiz* addressed claims based on inadequate

product warnings. It did not hold that allegations concerning a pharmaceutical defendant's independent promotional and post-approval conduct must be reduced to a challenge to FDA-approved label language. Novartis first recasts Plaintiff's allegations as exclusively label-based, then relies on label-based authorities to defeat the theory it created. That does not address the claims actually pleaded.

*Centocor, Inc. v. Hamilton*, 372 S.W.3d 140 (Tex. 2012), does not compel dismissal. Plaintiff does not seek to evade the learned-intermediary doctrine by relabeling a failure-to-warn claim. She alleges that Novartis's physician-facing scientific, promotional, and post-approval conduct shaped the information provided to prescribing physicians. *McKay v. Novartis Pharmaceutical Corp.*, 751 F.3d 694 (5th Cir. 2014), involved traditional failure-to-warn claims and did not address the independent off-label promotional conduct alleged here. Neither decision permits Novartis to avoid scrutiny merely because another company manufactured the dispensed tablets.

*Gaulding* therefore does not resolve the claims pleaded here. Plaintiff does not seek to hold Novartis liable as one of several unidentified suppliers or merely on the ground that another manufacturer copied its label. She alleges liability arising from Novartis's own warnings, information, recommendations, promotional activity, and other post-approval conduct concerning everolimus. Those allegations must be evaluated under Chapter 82's pharmaceutical-specific provisions, not reduced to the asbestos product-identification issue decided in *Gaulding* or to a label-only theory Plaintiff did not plead.

## VI. The Boxed Warning Did Not Address the Off-Label Use

Plaintiff does not allege that the Zortress® label failed to identify serious risks. She alleges that Novartis promoted everolimus for off-label conversion of heart-transplant recipients without

providing the clinical framework necessary to evaluate and safely implement that use. Rather than fill the safety gap left by the absence of FDA-approved guidance, Novartis allegedly exploited it to promote broader use while avoiding the scrutiny accompanying an approved indication.

## VII. Plaintiff Has Pleaded Facts Sufficient at This Stage to Invoke Section 82.007(b)(3)'s Off-Label-Promotion Exception

Defendant argues that Plaintiff cannot rebut Section 82.007's presumption against failure-to-warn liability, and that the off-label-promotion exception, Section 82.007(b)(3), rests on nothing more than the "bare allegation" that Defendant "advanced heart-transplant use … in a manner inconsistent with FDA's approved indication." That isolates a single sentence and disregards the surrounding allegations. The Complaint alleges that Defendant used physician-facing scientific publications, transplant-related activities, market communications, and shared everolimus branding across the Certican®, Zortress®, and Afinitor® product family to normalize heart-transplant conversion despite the absence of FDA approval for that indication, and identifies three specific benefit narratives, renal protection, cardiac-allograft vasculopathy reduction, and CMV-related outcomes, explaining why each allegedly presented a materially incomplete safety picture for stable heart-transplant conversion.

Defendant's cited authorities do not require otherwise. In *Johnson*, the pro se plaintiff alleged no facts supporting off-label promotion beyond the bare conclusion that promotion occurred. *Quintanilla v. Bristol-Myers Squibb Co.*, No. 2:16-CV-172, 2016 WL 11902139, at *3 (S.D. Tex. Oct. 25, 2016) required "fact-based allegations" to elevate an off-label-marketing claim beyond speculation: exactly what the Complaint provides. *Anderson v. Abbott Laboratories*, No. 3:11-CV-1825-L, 2012 WL 4512484, at *5 (N.D. Tex. Sept. 30, 2012) likewise involved a plaintiff who pled no specific promotional conduct at all. Defendant's interpretation would largely

eliminate Section 82.007(b)(3) whenever a prescription is filled with a generic equivalent, a result the Legislature did not write the exception to produce.

Defendant's footnote asserting that clinical research categorically cannot constitute "promotion" under 21 C.F.R. § 312.2(b)(1) also does not resolve the pleading. Plaintiff alleges a broader course of market-facing conduct beyond the mere sponsorship of a clinical investigation; whether that conduct crosses into actionable promotion is a fact-intensive question the pleadings cannot resolve. Section 82.007(b)(3) asks whether Defendant "recommended, promoted, or advertised" the off-label use. Plaintiff alleges factual conduct that falls within those statutory terms. Whether Defendant ultimately characterizes those activities as scientific research, education, or promotion presents a factual dispute that cannot be resolved on a Rule 12(b)(6) motion. Plaintiff does not rely on Section 82.007(b)(1), does not plead fraud on the FDA, and invokes only the distinct off-label-promotion exception in Section 82.007(b)(3), which Defendant cannot defeat by answering an exception Plaintiff does not invoke.

## VIII. Plaintiff's Claims Are Not Preempted, as the Complaint Plausibly Alleges Newly Acquired Information

At the pleading stage, Plaintiff need only plausibly allege newly acquired information that permitted Novartis to strengthen its warning unilaterally, and the Complaint does so. Defendant nevertheless argues that the failure-to-warn claims are preempted under the Changes Being Effected regulation, 21 C.F.R. § 314.70(c)(6)(iii), citing *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299 (2019), and *Wyeth v. Levine*, 555 U.S. 555 (2009). Defendant's reliance on *PLIVA, Inc. v. Mensing* underscores rather than undermines Plaintiff's position: *Mensing* preempted claims against generic manufacturers precisely since they lack the unilateral authority to invoke the CBE regulation, 564 U.S. at 623-24, while Defendant, as the NDA holder, indisputably possesses that

authority: the entire predicate for *Wyeth v. Levine*, 555 U.S. 555 (2009) holding that failure-to-warn claims against a brand manufacturer may proceed notwithstanding FDA approval of the existing label. The only question is whether the Complaint plausibly alleges newly acquired information, not whether the CBE pathway was available to Defendant at all.

The Complaint alleges that post-approval heart-transplant use, study activity, and real-world converted-patient use created a population requiring a complete heart-transplant risk profile, and identifies public clinical-trial records, transplant literature, and study registrations associated with Defendant or Defendant-linked everolimus research addressing heart-transplant use. "Newly acquired information" under 21 C.F.R. § 314.3(b) includes "data, analyses, or other information not previously submitted to [FDA]" that "reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA." Whether the alleged post-approval studies and real-world use satisfy that definition depends on comparing what Defendant submitted to FDA against what it later learned, an evidentiary comparison the Court cannot make on the pleadings, and one on which Defendant, not Plaintiff, holds the relevant regulatory history.

Taken as true, the pleaded post-approval studies, transplant literature, study registrations, and converted-patient experience support the reasonable inference that, before the injury-producing use alleged here, Defendant possessed information revealing risks of a different type or greater severity or frequency and providing reasonable evidence of a causal association. 21 C.F.R. §§ 314.3(b), 201.57(c)(6)(i). Whether each item had previously been submitted to FDA, and when Defendant acquired it, depend on Defendant's regulatory files and cannot be decided against Plaintiff on the pleadings.

Defendant also argues that Plaintiff's Exhibit C does not identify Novartis as participating in the studies reflected in those public records. That argument improperly asks the Court to weigh

competing factual inferences against Plaintiff at the pleading stage. The Complaint does not rely on Exhibit C as the exclusive source of Defendant's involvement. Rather, it alleges a broader course of Defendant's post-approval conduct, including its own scientific activities, promotional communications, publication strategy, and transplant-related initiatives. At this stage, the Court must accept those well-pleaded factual allegations as true and draw reasonable inferences in Plaintiff's favor. Whether Defendant ultimately participated in particular studies or possessed particular information presents a factual question for discovery, not a basis for dismissal under Rule 12(b)(6).

Defendant's cited appellate authorities do not compel a contrary result: in *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 779 F.3d 34, 41 (1st Cir. 2015), and *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 708 (2d Cir. 2019), the allegations did not plausibly establish that the cited post-approval materials revealed risks different from or more severe than those previously submitted to FDA. Here, the Complaint identifies specific categories of post-approval heart-transplant evidence and alleges they revealed materially different or more severe risks associated with conversion of established recipients. Whether those materials had been submitted to FDA and what they revealed cannot be resolved on the pleadings.

## IX. The Absence of a Prior Decision Addressing These Precise Facts Does Not Bar Plaintiff's Claims

Defendant repeatedly suggests that Plaintiff's claims fail since no reported Texas or Fifth Circuit decision has imposed liability under these precise circumstances. That is not the Rule 12(b)(6) inquiry. Plaintiff does not ask this Court to recognize a new duty, create a new cause of action, or expand Texas tort law. She asks the Court to apply established principles of negligence, products liability, and wrongful death to Defendant's own alleged conduct.

Nor is the conduct alleged here novel. Federal courts have long recognized that post-approval pharmaceutical conduct, including off-label promotion, scientific messaging, publication strategy, and other physician-facing communications, may give rise to legal liability in other contexts, including False Claims Act litigation and related federal enforcement actions. Those cases establish that this category of pharmaceutical conduct is capable of supporting legal liability. Plaintiff alleges the same category of conduct, but a different injured party and seeks relief under established Texas tort law rather than the False Claims Act.

At this stage, Plaintiff need not prove that Texas courts have previously applied established tort principles to this precise factual scenario. Federal courts' recognition that the same category of pharmaceutical conduct may give rise to liability in other contexts further supports the plausibility of Plaintiff's claims under established Texas law. Plaintiff has alleged a detailed factual theory supported by specific allegations. Whether Defendant's internal evidence confirms or refutes that theory is a matter for discovery, particularly where the relevant facts are uniquely within Defendant's possession. Whether Plaintiff ultimately proves her claims is a question for summary judgment or trial, not a motion to dismiss.

## X. Plaintiff Has Standing to Assert Her DTPA Claim

Defendant combines two distinct questions. The first is whether Plaintiff personally purchased a prescription written for her father. That is not the governing inquiry. Dov Fischman acquired and used everolimus for his own treatment and was the consumer. Plaintiff does not become ineligible to seek relief as his surviving daughter and statutory wrongful-death beneficiary merely since she did not purchase a drug that was never prescribed for her.

The DTPA does not require direct purchase from the defendant or contractual privity. It requires that the goods or services be acquired by purchase or lease and form the basis of the

complaint. Tex. Bus. & Com. Code § 17.45(4). A person may acquire goods obtained by another for that person's benefit. *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1426–27 (5th Cir. 1992). *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983), and *Kennedy v. Sale*, 689 S.W.2d 890, 892–93 (Tex. 1985), likewise reject any privity requirement. Dov Fischman's acquisition of everolimus, not his daughter's purchase of it, supplies the required consumer transaction.

The second question is the legal effect of the consumer's death. Defendant presents *Sharpe v. Lyft, Inc.* as settled Texas law, but *Sharpe* expressly acknowledged that the Texas Supreme Court has not decided the question and that Texas appellate courts are divided. The Texas Supreme Court reserved the question in *Shell Oil Co. v. Chapman*, 682 S.W.2d 257, 259 (Tex. 1984), and again in *PPG Industries, Inc. v. JMB/Houston Centers Partners Ltd. Partnership*, 146 S.W.3d 79, 91 (Tex. 2004). *Sharpe* is a nonbinding federal prediction on an unresolved question of Texas law, not a rule that permits dismissal as though the issue were settled.

Texas appellate authority supports Plaintiff's position. *Thomes v. Porter* held that DTPA rights continue after the consumer's death. 761 S.W.2d 592, 594–95 (Tex. App.—Fort Worth 1988, no writ). *Mahan Volkswagen, Inc. v. Hall* rejected the argument that surviving family members could not recover since the decedent, rather than the plaintiffs, purchased the product. It held the decedent was the consumer and permitted her surviving children to receive DTPA recovery attributable to her, while treating their individual wrongful-death damages separately. 648 S.W.2d 324, 334–36, 338–39 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). *Mahan* therefore refutes Novartis's purchaser argument without merging Plaintiff's individual wrongful-death damages into the DTPA remedy.

*Baker v. Countrywide Home Loans, Inc.* and *Lukasik v. San Antonio Blue Haven Pools, Inc.* require the acquired goods or services to form the basis of the complaint. That requirement is satisfied here. Everolimus and Novartis's representations and omissions concerning its use form the basis of Plaintiff's DTPA claim. Although Texas authority is divided on whether a DTPA claim survives the consumer's death, that unresolved question forecloses dismissal with prejudice. If the Court determines that additional allegations concerning Plaintiff's right to pursue the claim are required, Plaintiff respectfully requests leave to amend.

## XI. Plaintiff Has Standing to Assert Her Individual Wrongful-Death Claim

Defendant's contention that wrongful death fails absent an underlying tort adds nothing to its Motion: Plaintiff has plausibly alleged the underlying negligence, marketing-defect, and failure-to-warn theories from which the derivative wrongful-death claim proceeds.

Defendant argues that Plaintiff lacks standing to bring a wrongful-death claim since more than three months elapsed after Dov Fischman's death and Plaintiff is not the executor or administrator of an estate, citing Tex. Civ. Prac. & Rem. Code § 71.004(c), and further argues in a footnote that Plaintiff must plead that this action is brought "for the benefit of all" statutory beneficiaries, citing *Estate of Alex through Coker v. T-Mobile US, Inc.*, 313 F. Supp. 3d 723, 733 (N.D. Tex. 2018), and *Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 850 (Tex. App., San Antonio 1997, pet. denied). Neither argument warrants dismissal.

Texas law recognizes wrongful-death and survival actions as separate statutory remedies: a wrongful-death claim belongs to the statutory beneficiaries designated by Section 71.004 and compensates them for their own losses, while a survival action preserves the decedent's own cause of action under Section 71.021 and belongs to the estate. *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 404-05 (Tex. 1993); *Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33, 36 (Tex. 1963).

Plaintiff asserts only her own wrongful-death claim as Dov Fischman's surviving daughter under Section 71.004(a) and (b), and does not assert a survival claim, seek estate damages, or sue in any representative capacity.

Section 71.004(c) provides that if no statutory beneficiary commences a wrongful-death action within three months after the decedent's death, the executor or administrator shall bring the action unless requested not to do so by all statutory beneficiaries. That statute imposes a duty on an existing executor or administrator; it does not require the beneficiaries to open an estate, require a court to appoint an executor where none exists, or state that the beneficiaries lose their Section 71.004(a) and (b) rights after three months. Defendant's interpretation inserts a limitation into Section 71.004(c) that the Legislature never enacted. Federal and Texas courts have rejected that interpretation: *Adkison v. Polaris Industries, Inc*, No. 3:18-CV-02014-M, 2020 WL 159248, at *9 (N.D. Tex. Jan. 13, 2020), recognized that statutory beneficiaries may bring a wrongful-death action outside the three-month period where no administrator has been appointed when suit is filed; *Trostle v. Trostle*, 77 S.W.3d 908, 913 (Tex. App., Amarillo 2002, no pet.), likewise permitted beneficiaries to proceed where no executrix had been appointed before suit; and *Morin v. Ford Motor Co*, No. 3:07-CV-1700-L, 2009 WL 2486027, at *7 (N.D. Tex. Aug. 12, 2009), confirmed that *Trostle* stands for that proposition. That is precisely the circumstance here: no estate was ever opened, no executor or administrator was appointed, and no personal representative has sought to prosecute a wrongful-death or survival action. Defendant's interpretation would leave the statutory beneficiaries the Legislature identified without any practical means of enforcing their rights whenever, as here, no estate exists.

Defendant's reliance on *Estate of King v. Texas Department of Criminal Justice* does not require a different result. There, the court addressed a complaint filed roughly two years after the

decedent's death that did not allege facts establishing the plaintiff was the estate's executor or administrator. Plaintiff does not rely on executor or administrator status, and does not assert a survival claim belonging to an estate; she asserts her own wrongful-death claim as a statutory beneficiary and affirmatively alleges what Defendant's argument disregards: no estate was opened, no executor or administrator was appointed, and no personal representative was available to bring the action. *Estate of King* therefore does not establish that a statutory beneficiary loses her own wrongful-death claim merely on the ground that three months elapsed where no estate or personal representative existed.

Defendant's interpretation also improperly treats Section 71.004(c) as a limitations period. It is not: the Fourteenth Court of Appeals has recognized that Section 71.004(c) "makes no mention of a limitations period" and therefore "neither restricts nor expands" the two-year statute of limitations for wrongful-death claims. *Enciso v. Chmielewski*, No. 14-99-00714-CV, 2000 WL 423085, at *2-3 (Tex. App. Houston [14th Dist.] Apr. 20, 2000, no pet.). Plaintiff filed within that limitations period.

Section 71.004(b) expressly permits one or more statutory beneficiaries to bring the wrongful-death action for the benefit of all. That procedural requirement does not convert the beneficiaries' individual damages into estate property or require Plaintiff to recover damages sustained by anyone else. Each beneficiary may recover only the damages that beneficiary personally sustained. *Avila v. St. Luke's Lutheran Hospital*, 948 S.W.2d 841, 850 (Tex. App. San Antonio 1997, pet. denied). Plaintiff seeks only her own mental-anguish and loss-of-companionship damages. She does not assert a survival claim, seek estate damages, or waive or release any nonparty beneficiary's individual rights. The other statutory beneficiaries know of this

action and elected not to participate. If the Court requires a more express statement that the action proceeds for the benefit of all, the remedy is leave to amend, not dismissal with prejudice.

## XII. This Court Has Specific Personal Jurisdiction Over Novartis, or, at Minimum, Plaintiff Is Entitled to Jurisdictional Discovery

Defendant argues both that this Court lacks general jurisdiction under *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and lacks specific jurisdiction under *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017). Plaintiff does not contend this Court has general jurisdiction over Defendant, a Delaware corporation headquartered in New Jersey; she relies solely on specific jurisdiction, so Defendant's *Daimler* argument answers a question Plaintiff does not present.

Defendant's specific-jurisdiction argument fares no better. *Bristol-Myers Squibb* held that a California court lacked specific jurisdiction over the claims of non-resident plaintiffs whose prescriptions, purchases, ingestion, and injuries all occurred outside the forum state, since nothing about those plaintiffs' cases touched California. This case is the mirror image: Dov Fischman was, and Plaintiff is, a Texas resident, and the Complaint alleges he received the treatment at issue at UT Southwestern Medical Center within this District, where the prescribing decisions were made, the drug was prescribed and administered, and Defendant's communications and promotional activities allegedly reached and shaped the prescribing environment. Defendant, by contrast, is incorporated in Delaware and headquartered in New Jersey, jurisdictions with no connection to the conduct or injuries alleged.

Plaintiff's claims arise out of and relate to Defendant's Texas-directed conduct. Defendant improperly focuses on where its internal labeling and marketing decisions were made rather than where the resulting scientific, promotional, and physician-facing activities were directed, applied, and allegedly caused injury. Dov Fischman's conversion and treatment occurred in Texas at UT

Southwestern, where the alleged conduct reached the prescribing environment. Plaintiff therefore relies on suit-related Texas contacts, not unrelated pharmaceutical commerce or nationwide marketing. At minimum, these allegations warrant jurisdictional discovery.

Plaintiff clarifies that Defendant's relationship with UT Southwestern Medical Center extended beyond selling pharmaceutical products: Defendant entered into Master Clinical Trial Agreements establishing an ongoing contractual framework through which UT Southwestern conducted multiple Defendant-sponsored clinical trials, reflecting a continuing institutional relationship and placing Defendant's research and promotional activity concerning everolimus within the same Texas institution where Dov Fischman was treated. At this stage, without an evidentiary hearing, Plaintiff need only make a prima facie showing of personal jurisdiction, and relevant factual disputes must be resolved in her favor. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). The Court need not resolve the factual dispute over the extent of those contacts. This preliminary showing is sufficient to warrant jurisdictional discovery into the extent and content of Defendant's physician-facing communications and institutional relationships in this District, and does not warrant dismissal under Rule 12(b)(2) without that discovery. Defendant's assertion that it made all relevant corporate decisions in New Jersey does not eliminate specific jurisdiction, which turns not on the location of Defendant's internal decision-makers but on Defendant's suit-related contacts with the forum and their relationship to Plaintiff's claims.

Defendant's reliance in Footnote 14 on *In re Zantac (Ranitidine) Products Liability Litigation*, 546 F. Supp. 3d 1192, 1210–14 (S.D. Fla. 2021), and *Henry v. Angelini Pharma, Inc.*, No. 2:17-cv-02593-TLN-KJN, 2020 WL 1532174, at *4 (E.D. Cal. Mar. 31, 2020), does not resolve the jurisdictional question here. Those authorities hold that a brand manufacturer's general

sales or marketing contacts with a forum do not establish specific jurisdiction over claims arising from a plaintiff's use of a generic drug. Plaintiff does not rely merely on the fact that Novartis conducted business or sold products somewhere within Texas; the Complaint alleges Texas contacts directed toward the particular institution where Dov Fischman was treated, where his conversion to everolimus was recommended and implemented, and where Defendant's allegedly deficient information framework reached the prescribing environment.

Whether Defendant's contacts with UT Southwestern included everolimus-specific research, communications, promotional activity, investigator relationships, or other related conduct cannot be resolved from Defendant's characterization of its contacts in a Rule 12(b)(2) motion. Those facts are principally within Defendant's and UT Southwestern's possession. At minimum, the allegations establish a sufficient basis for jurisdictional discovery before the Court determines whether the relationship among Defendant, the forum, and the litigation satisfies specific jurisdiction.

This is not a request to search for jurisdiction based on speculation. Plaintiff identifies the Texas institution, the continuing contractual and research relationship, the prescribing environment, and the categories of everolimus-specific contacts to be tested. That preliminary showing warrants targeted jurisdictional discovery before dismissal. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).

## XIII. Defendant Improperly Attempts to Supplement the Complaint with Allegations from Pleadings Filed in Separate Actions

Defendant relies on an allegation from Plaintiff's original complaint against Boston Children's Hospital to support its innovator-liability argument. That pleading has been superseded

by a First Amended Complaint that omits the allegation. In any event, the identity of the generic manufacturer does not define the claims asserted against Novartis.

Defendant's references to Plaintiff's other actions are equally irrelevant. Those cases involve different defendants, different conduct, and different duties. The fact that multiple actors may have contributed to the same injury does not make the claims duplicative and does not permit Defendant to substitute allegations against others for the allegations pleaded against Novartis.

A Rule 12(b)(6) motion tests the sufficiency of the operative Complaint in this case. Defendant cannot supplement, narrow, or rewrite that Complaint by importing selected allegations from separate litigation. The only question before the Court is whether the operative Complaint plausibly states claims against Novartis.

## CONCLUSION AND PRAYER

Plaintiff's claims are not duplicative. Each addresses a distinct aspect of Defendant's alleged conduct: negligence addresses Defendant's failure to exercise reasonable care; products liability addresses the adequacy of the warnings and safety information governing everolimus; gross negligence addresses Defendant's conscious disregard of an extreme risk; and the DTPA addresses the false or misleading marketplace impression created by Defendant's commercial representations and material omissions concerning off-label everolimus use in heart-transplant recipients. Taken together, the Complaint alleges multiple independent forms of actionable misconduct, each of which is sufficiently pleaded and should proceed.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Novartis Pharmaceuticals Corporation's Motion to Dismiss in its entirety, together with such other and further relief to which Plaintiff may be justly entitled. Alternatively, if the Court determines

that Plaintiff has not adequately addressed any argument raised in Defendant's Motion, or that any claim, allegation, or jurisdictional basis requires additional factual specificity, Plaintiff respectfully requests leave to amend before dismissal. Plaintiff is proceeding pro se and should be afforded an opportunity to cure any deficiency identified by the Court, particularly where amendment may permit the claims to be resolved on their merits rather than dismissed with prejudice.

Respectfully submitted,

Date: July 27, 2026

/s/ _Gallit Fischman_

GALLIT FISCHMAN, Pro Se
10114 Deermont Trail
Dallas, TX 75243
(214) 893-6720
gallitfischman@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2026, a true and correct copy of the foregoing instrument was served by electronic filing through the Court's CM/ECF system on all counsel of record and registered ECF users entitled to notice in this case.

/s/ _Gallit Fischman_

Gallit Fischman, Plaintiff, Pro Se